THIS OPINION IS
A PRECEDENT
OF THE TTAB

Mailed:
July 27, 2010

**UNITED STATES PATENT AND TRADEMARK OFFICE**

———

**Trademark Trial and Appeal Board**

———

Threshold.TV, Inc. and Blackbelt TV, Inc.

v.

Metronome Enterprises, Inc.[1]

———

Opposition No. 91152662 to application Serial No. 76256094,
filed on May 10, 2001

———

Peter C. Beirne of Law Office of Peter C. Beirne for
Threshold.TV, Inc. and Blackbelt TV, Inc.

Marc J. Kesten of Marc J. Kesten, P.L. for Metronome
Enterprises, Inc.

———

Before Bucher, Zervas and Wellington, Administrative
Trademark Judges.

Opinion by Zervas, Administrative Trademark Judge:

---

[1] On July 7, 2009, during the trial period, the Office recorded
nunc pro tunc assignments of the opposed application from (i)
Metronome Corporation, the original applicant, to Erik Jones, and
(ii) from Erik Jones to Metronome Enterprises, Inc.  See Reel No.
4018, Frame Nos. 0284 and 0287.  In view of the assignments and
their recordation, Metronome Enterprises, Inc. is substituted as
a party defendant for Metronome Corporation.  See *Binney & Smith
Inc. v. Magic Marker Industries, Inc.*, 222 USPQ 1003, 1004 n.1
(TTAB 1984); and TBMP § 512.01 (2d ed. rev. 2004).

Metronome Enterprises, Inc. ("applicant") is the owner of record of an application for registration on the Principal Register of the mark



for "entertainment in the nature of television programming in the field of martial arts, namely, providing martial arts television network programming that will bring martial arts education and entertainment to homes throughout the United States 24 hours a day, seven days a week" in International Class 41. The application was filed on May 10, 2001 as an intent to use application, and an amendment to allege use was filed on February 8, 2002. Applicant claims December 31, 1999 as its date of first use anywhere and January 20, 2000 as its date of first use in commerce. Applicant has disclaimed the term "TV."

Blackbelt TV, Inc., which is identified in the amended notice of opposition as the successor in interest to Threshold.TV, Inc.[2] (collectively "opposer"), opposes

---

[2] In its September 30, 2008 order, the Board joined Blackbelt TV, Inc. as a plaintiff.

registration of applicant's mark alleging, inter alia, that it has used BLACKBELT TV since February 1999 as a mark in interstate commerce in connection with digital broadband delivery over the Internet of information, content, entertainment and audio-visual programming relating to fighting and martial arts, and featuring sports and entertainment events in the fields of fighting and martial arts.[3] Opposer additionally alleges (a) priority and likelihood of confusion with opposer's BLACKBELT TV designation; (b) that applicant is not offering and has never offered the services which are recited in its application; and (c) that applicant committed fraud on the Office in connection with two filings with the USPTO, namely, its amendment to allege use and declaration accompanying its motion to amend its dates of use, in which applicant stated, under oath, that the mark has been used in connection with the services recited in the application.

Applicant filed an answer which denied the salient allegations of the original notice of opposition and raised several affirmative defenses including the doctrines of estoppel and unclean hands.

---

[3] Opposer has also alleged use of BLACKBELT, BLACKBELT.TV and BLACKBELT.COM. Because opposer has not discussed these designations in its main brief, we consider opposer to have waived its claims based on these designations.

*The Record*

In addition to the pleadings, the file of the opposed application is part of the record without any action by the parties. Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b). Opposer introduced the following:[4]

(i) the testimonial deposition of Josh Wexler, president of Blackbelt TV, and exhibits;

(ii) a memorandum and order from *Metronome Corp. v. Threshold TV, Inc*., Civil Action No. CV 03-2550 GAF, dated October 20, 2004, in the Central District of California;[5] and

(iii) excerpts from the transcript of Metronome Corporation's discovery witness, Erik Jones, identified as "president of Metronome" and applicant's predecessor, in the California civil action, submitted by notice of reliance.

Applicant introduced the following evidence:

(i) the testimonial depositions of (a) Erik Jones; (b) Sheldon Altfeld, a former consultant to Mr. Jones; and (c) Darryl Moore, who assisted Mr. Jones with budgeting issues and financing efforts; and

---

[4] As discussed *infra*, applicant has objected to some of these materials.

[5] Opposer submitted the memorandum and order electronically with only a cover sheet identifying its filing as a notice of reliance. The Board did not receive an actual notice of reliance describing the memorandum and order or indicating the relevance thereof. See Trademark Rule 2.122(e); and TBMP § 704.02 (2d ed. rev. 2004)("The notice of reliance must include a description of the proffered materials and, in some instances, must indicate the relevance of those materials to the case."). Because applicant did not object on the basis that opposer failed to submit an actual notice of reliance with its cover sheet, we have not excluded the memorandum and order on this basis.

> (ii)      documents, which applicant characterizes as "publications of general circulation" but which in actuality are search results from godaddy.com regarding the domain name blackbelt.tv, submitted by notice of reliance.[6]

*Evidentiary Objections*

Applicant's objections to opposer's evidence:

1. Applicant's objection to the California district court's memorandum and order is overruled because applicant itself relies on this memorandum and order in its brief. (See applicant's brief at 14, where applicant stated, "First, the District Court agreed with the U.S. Patent and Trademark Office's assessment of opposer's mark, and found that the words 'BLACKBELT TV,' if intended to describe television martial arts programming, are merely descriptive.")

2. We sustain applicant's objection to the excerpts of Mr. Jones's April 22, 2004 discovery deposition in the California civil action (submitted by notice of reliance).[7] Testimony from another proceeding must be introduced

---

[6] The search results show web addresses, and opposer's attorney has provided the date when the information was accessed. See *Safer, Inc. v. OMS Investments, Inc.*, 94 USPQ2d 1031, 1039 (TTAB 2010)("*if a document obtained from the Internet identifies its date of publication or date that it was accessed and printed, and its source* ( e.g., the URL), it may be admitted into evidence pursuant to a notice of reliance in the same manner as a printed publication in general circulation in accordance with Trademark Rule 2.122(e)." ) (emphasis in original).

[7] Applicant's objection to references to Mr. Jones's past in these excerpts is moot in view of our exclusion of this deposition evidence.

pursuant to a stipulation of the parties approved by the Board or by motion granted by the Board, and the Board has construed the term "testimony," as used in Trademark Rule 2.122(f), as meaning only trial testimony, or a discovery deposition which was used, by agreement of the parties, as trial testimony in the other proceeding. See TBMP §§ 530 and 704.13 (2d ed. rev. 2004).

3. Applicant objected to Exhs. 1 and 4 to Mr. Wexler's testimonial deposition, namely, Mr. Wexler's entire discovery deposition transcript in the California civil action (Exh. 1), and Mr. Wexler's summary judgment declaration filed in the same proceeding (Exh. 4). Applicant objected to Exh. 1 on the ground that the deposition comprises testimony from another proceeding for which opposer had not obtained permission under Trademark Rule 2.122(f) to introduce into evidence, and to Exh. 4 on the ground that the statements therein constitute "inadmissible hearsay." Mr. Wexler testified at trial that Exhs. 1 and 4 were copies of his deposition and declaration, respectively, and that he provided "truthful answers" to the questions in the deposition and that the statements in the declaration are "true and accurate." Wexler at 9, 10 and 16.

Trademark Rule 2.122(f) has no applicability in this situation. Opposer introduced Mr. Wexler's prior discovery

deposition as an exhibit to his trial deposition, and Mr. Wexler, through his testimony at trial, authenticated the transcript. Trademark Rule 2.122(f) is intended to offer a party a means for introducing testimony from a prior proceeding without having to call a witness to authenticate the testimony. The rule thereby allows a party a relatively quick and simple means by which to introduce testimony from another proceeding into evidence.[8] It is not intended as specifying the only means by which oral or written statements from another proceeding can be introduced at trial in a Board proceeding.

Applicant's objection to Exh. 4 on the basis of hearsay is also not an appropriate objection. Because Mr. Wexler testified as to the truth and accuracy of his statements in his declaration, the statements in the declaration are not hearsay.

We note too that the record does not reflect that applicant had any notice from opposer that opposer was considering introducing the prior deposition and declaration as exhibits to the testimony deposition. It is possible that an adversary might object at a testimony deposition to a witness's authentication of such material from another

---

[8] We reiterate that the Board has construed the term "testimony," as used in Trademark Rule 2.122(f) as meaning only trial testimony, or a discovery deposition which was used, by agreement of the parties, as trial testimony in the other proceeding.

7

proceeding because the adversary had no prior opportunity to review the material and, therefore, was unable to prepare to effectively cross-examine the witness as to his prior statements. However, in this case applicant did not object to Exhs. 1 and 4 during the testimony deposition or at any point during opposer's testimony period, and only raised these objections in its brief. Applicant did not timely place opposer on notice of the objections and afford opposer an opportunity to either address the objections or elicit direct testimony from Mr. Wexler in lieu of reliance on the exhibits.

For the foregoing reasons, applicant's objections to Exhs. 1 and 4 are overruled.

4. Applicant's objections to statements in opposer's brief regarding Mr. Jones's past are sustained. Because we have stricken the evidence on which opposer relies in support of such statements (see no. 2 above), there is no evidentiary support in the trial record for these statements in opposer's brief.

Opposer's objections to applicant's evidence

In its main brief, opposer did not object to any of applicant's evidence. In its reply brief, however, opposer raised four pages of objections to applicant's evidence. Many of opposer's objections are on the basis of lack of foundation and authenticity and pertain to a number of

exhibits to the testimony depositions of applicant's witnesses. Because opposer did not raise its objections in its main brief, we deem opposer's objections to be waived.[9] Opposer cannot be allowed to wait until its reply brief to raise objections. Such a tactic effectively forecloses applicant from responding to the objections. We have considered, however, opposer's arguments regarding the weight we should accord to applicant's evidence, including the weight to be accorded to the testimony of applicant's witnesses.

*Preliminary Issue: Motion to Amend First Use Dates*

Early in this proceeding, applicant filed a motion to amend its dates of use set forth in the amendment to allege use filed while the application was pending, prior to opposition. The motion to amend was accompanied only by a supporting declaration from Mr. Jones. Applicant, which prosecuted its application without the assistance of trademark counsel, asserted that "[o]nly recently, upon consulting with newly-retained trademark counsel, did Applicant learn and understand what the term 'use' means." Motion at 2. The Board deferred consideration of the motion until summary judgment or final decision, citing TBMP 514.03 (2d ed. rev. 2004).

---

[9] Moreover, the objections go to the probative value of the evidence, rather than their admissibility. Even if we were to

Applicant seeks to amend its date of first use anywhere from December 31, 1999 to August 25, 1985, and its date of first use in commerce from January 20, 2000 to July 5, 1987.

An applicant is entitled to prove an earlier date of use than the date alleged in its application, but its proof must be clear and convincing and must not be characterized by contradiction, inconsistencies or indefiniteness. See *Hydro-Dynamics, Inc. v. George Putnam & Co., Inc.*, 811 F.2d 1470, 1 USPQ2d 1772, 1773 (Fed. Cir. 1987). The reason for this evidentiary burden on applicant is because "a change of position [to earlier dates of use] from one 'considered to have been made against interest at the time of filing the application,' (internal citation omitted), requires enhanced substantiation." *Id.* Because there is no evidence in the trial record directed to either of the specific dates proposed by applicant as its amended first use dates, applicant has not established such first use dates by clear and convincing evidence.[10] Applicant's motion to amend the dates of use in its application is therefore denied.

*Opposer's Standing*

"Any person who believes that he would be damaged by the registration of a mark upon the principal register …

---

exclude the evidence, our resolution of this case would not be any different.

[10] Mr. Jones's declaration accompanying the motion to amend in and of itself is not sufficient evidence of the earlier dates of use sought by applicant.

may, file an opposition … stating the grounds therefor."
Section 13 of the Trademark Act of 1946, 15 U.S.C. §1063(a).
Thus, a party has standing to oppose in a Board proceeding
if it can demonstrate a real interest in the proceeding.
*Lipton Industries, Inc. v. Ralston Purina Co.,* 670 F.2d
1024, 213 USPQ 185 (CCPA 1982), citing *Universal Oil
Products Co. v. Rexall Drug and Chemical Co*., 463 F.2d 1122,
174 USPQ 458 (CCPA 1972).

Opposer uses the designation BLACKBELT TV which appears
in applicant's mark in connection with entertainment
programming relating to martial arts, including digital
broadband delivery over the Internet of information,
content, entertainment and audio-visual programming.[11]  This
is sufficient to demonstrate that opposer has a real
interest in this proceeding, and therefore has standing.

*Priority*

The question of priority is an issue in this case
because opposer has asserted common law rights to
BLACKBELT TV and does not own an existing registration upon
which it can rely under Section 2(d).  *Cf.*, *King Candy Co.,
Inc. v. Eunice King's Kitchen, Inc*., 496 F.2d 1400, 182 USPQ
108 (CCPA 1974).  To establish its priority under Section
2(d), opposer must prove that, vis-à-vis applicant, it owns

---

[11] See exh. 4, para. 3, and exh. 19 (opposer's response to applicant's Interrogatory No. 21) to Mr. Wexler's testimonial deposition.

11

"a mark or trade name previously used in the United States …
and not abandoned…."  Applicant, however, may rely on the
filing date of its application, which is May 10, 2001.  *See*
Trademark Act Section 7(c), 15 U.S.C. §1057(c); and *Larami
Corp. v. Talk to Me Programs, Inc.,* 36 USPQ2d 1840 (TTAB
1995).[12]

In order to establish priority of use,[13] opposer must
prove that it acquired trademark rights prior to the
applicant's first use.  Thus, opposer must prove that its
trademark is inherently distinctive, or acquired
distinctiveness before the date on which applicant can
establish its rights.  See *Otto Roth & Co. v. Universal
Foods Corp*., 640 F.2d 1317, 209 USPQ 40, 44 (CCPA 1981)
("[I]t is equally clear that if an opposer's alleged means
of trade designation is not distinctive -- does not identify
source -- then there is no basis upon which to compare such
a thing with the applicant's mark to determine whether
confusion as to source is likely").  Thus, "[u]nder the rule
of *Otto Roth*, a party opposing registration of a trademark

---

[12] Applicant introduced testimony and documentary evidence to
establish that its actual date of first use of its mark in
connection with its identified services is earlier than the
filing date of the application.  Because we find, *infra*, that
opposer has not established that its pleaded mark became
distinctive prior to the filing date of applicant's application,
we need not consider the evidence of applicant's use prior to its
filing date.
[13] Because opposer is relying on common-law rights, "the decision
as to priority is made in accordance with the preponderance of
the evidence."  *Hydro-Dynamics Inc. v. George Putnam & Co., Inc.,*
1 USPQ2d at 1773.

due to a likelihood of confusion with his own unregistered term cannot prevail unless he shows that his term is distinctive of his goods [or services], whether inherently or through the acquisition of secondary meaning or through 'whatever other type of use may have developed a trade identity.'" *Towers v. Advent Software, Inc*., 913 F.2d 942, 16 USPQ2d 1039, 1041 (Fed. Cir. 1990), citing *Otto Roth*, 209 USPQ at 43.

A designation asserted as a mark is not inherently distinctive if it is merely descriptive or generic. Because the parties in their briefs have discussed whether BLACKBELT TV is a merely descriptive designation, we consider whether the term BLACKBELT TV is merely descriptive of services on which opposer maintains it uses BLACKBELT TV, and, if it is merely descriptive, whether opposer has established that BLACKBELT TV has acquired distinctiveness, prior to the filing date of applicant's application.

A term is deemed to be merely descriptive of goods or services, within the meaning of Section 2(e)(1), if it forthwith conveys an immediate idea of an ingredient, quality, characteristic, feature, function, purpose or use of the goods or services. See, e.g., *In re Gyulay*, 820 F.2d 1216, 3 USPQ2d 1009 (Fed. Cir. 1987); and *In re Abcor Development Corp*., 588 F.2d 811, 200 USPQ 215 (CCPA 1978).

Whether a term is merely descriptive is determined not in the abstract, but in relation to the goods or services for which registration is sought, the context in which it is being used on or in connection with those goods or services, and the possible significance that the term would have to the average purchaser of the goods or services because of the manner of its use.  That a term may have other meanings in different contexts is not controlling.  *In re Bright-Crest, Ltd*., 204 USPQ 591, 593 (TTAB 1979).  Moreover, it is settled that "[t]he question is not whether someone presented with only the mark could guess what the goods or services are.  Rather, the question is whether someone who knows what the goods or services are will understand the mark to convey information about them."  *In re Tower Tech Inc*., 64 USPQ2d 1314, 1316-17 (TTAB 2002).  See also *In re Patent & Trademark Services Inc*., 49 USPQ2d 1537 (TTAB 1998); *In re Home Builders Association of Greenville*, 18 USPQ2d 1313 (TTAB 1990); and *In re American Greetings Corp.*, 226 USPQ 365 (TTAB 1985).

The dictionary definition of "black belt" is "one who holds the rating of expert in various arts of self defense (as judo and karate), also; the rating itself"; and the definition of TV is "television."[14]  Opposer maintains that

---

[14] We take judicial notice of these definitions of "black belt" and "tv" from the website merriam-webster.com.  The Board may take judicial notice of dictionary definitions, including online

14

it uses BLACKBELT TV in connection with "entertainment programming relating to fighting and martial arts, including digital broadband delivery over the Internet of information, content, entertainment and audio-visual programming relating to fighting and martial arts, and featuring sports and entertainment events in the fields of fighting and martial arts." Wexler summary judgment declaration para. 3, submitted as Exh. 4 to Wexler test. dep. BLACKBELT in opposer's designation immediately informs purchasers that opposer's services feature individuals who are experts in martial arts (of which karate is one). TV informs purchasers that opposer's services offer programming suitable for viewing on television, or through any other means for watching television programming, as on a computer. The combination of these two descriptive terms does not evoke a new and unique commercial impression; the combined terms merely retain their descriptive significance. Thus, we find that BLACKBELT TV describes a feature of opposer's services, and BLACKBELT TV is not inherently distinctive for opposer's services. It is therefore opposer's burden to demonstrate that its designation has acquired distinctiveness prior to the May 10, 2001 filing date of

---

dictionaries which exist in printed format. See *In re CyberFinancial.Net Inc*., 65 USPQ2d 1789, 1791 n.3 (TTAB 2002). See also *University of Notre Dame du Lac v. J. C. Gourmet Food Imports Co., Inc*., 213 USPQ 594 (TTAB 1982), *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

applicant's application.  See *Tone Brothers Inc. v. Sysco Corp*., 28 F.3d 1192, 31 USPQ2d 1321, 1327 (Fed. Cir. 1994) (Opposer, "as the party attempting to establish legal protection for its unregistered trade dress, has the burden of proving secondary meaning by a preponderance of the evidence").  See also *Perma Ceram Enterprises Inc. v. Preco Industries Ltd*., 23 USPQ2d 1134, 1136 (TTAB 1992) ("[W]here the mark relied upon by a plaintiff in support of its priority of use and likelihood of confusion claim is merely descriptive (or deceptively misdescriptive), then the plaintiff must establish priority of acquired distinctiveness").

To establish acquired distinctiveness of its designation, opposer relies on the district court's memorandum and order.  In the civil action, applicant, as plaintiff, alleged, inter alia, common law infringement of "the 'Black Belt TV' mark."  Order at 2.  In deciding opposer's summary judgment motion, the district court stated in the memorandum and order:

> The Court concludes that Defendant's [opposer's] motion is meritorious.  Plaintiff [applicant] has been unable or unwilling to present any evidence, beyond its CEO's assertion, that the "Black Belt TV" mark was *ever* used, let alone evidence that the mark is distinctive rather than merely descriptive, or that the mark has acquired secondary meaning through any degree of consumer recognition or association with Plaintiff.  In contrast, Defendant has presented considerable

16

> evidence that it has used its "Blackbelt TV" mark in commerce and that the mark has achieved fame and association with Defendant. For these reasons, the Court **GRANTS** Threshold's motion for summary judgment on all of Plaintiff's claims.

(emphasis in the original.) Order at 2-3. The court noted that applicant [as plaintiff] had not "submitted an exemplar of its mark to allow the Court to determine if its *design* (as opposed to word) mark is entitled to protection or if it is substantially similar to Defendant's design mark." (emphasis in original.) *Id*. at 16 – 17. In a December 20, 2007 Board order addressing the parties' responses to an order to show cause issued after the termination of the district court proceeding, the Board found that the district court's decision does not have any issue or claim preclusive effect in part because the district court did not consider the mark which is the subject of the involved application.

Opposer, early in its main brief herein, relies on the district court's order and argues that the district court stated that opposer's designation "has achieved fame and association" with opposer; and that therefore opposer need not establish that its designation is distinctive. Brief at 5. However, later in its brief, without specifying that it is arguing in the alternative, opposer takes a different position and argues that "[t]he fame associated with the Opposer's mark as shown by the publicity and acceptance by the media of the Opposer's mark and as already found by the

District Court's ruling in the civil matter establish that the Opposer's mark has acquired distinctiveness through secondary meaning."  Id. at 11.

We already addressed the question of whether the district court's statement has any issue preclusive effect in this proceeding in our December 20, 2007 order.  We concluded that it does not have any issue preclusive effect because a determination of whether opposer's designation has acquired distinctiveness was not necessary and essential to the resulting judgment in the civil action.  Additionally, we pointed out that the district court did not expressly state that opposer's pleaded BLACKBELT TV designation had acquired distinctiveness.[15]  Under the law of the case doctrine, we do not revisit our conclusion.[16]

We turn then to the remaining evidence that opposer introduced into the record in this proceeding which bears on its contention that its designation has acquired distinctiveness for any of its asserted services.  Opposer relies on Mr. Wexler's testimony and the exhibits to his

---

[15] Even if the district court's decision could be read as including a finding that opposer's pleaded BLACKBELT TV designation had acquired distinctiveness, the district court's decision does not specify when such distinctiveness was acquired.
[16]  The doctrine holds that a court generally should not reopen issues decided in earlier stages of the same litigation. *Agostini v. Felton*, 521 U.S. 203, 236 (1997).  The doctrine does not apply unless the court is "convinced that [its prior decision] is clearly erroneous and would work a manifest injustice."  *Arizona v. California*, 460 U.S. 605, 618, n. 8 (1983).  Opposer has not persuaded us that there is an error in our prior decision.

testimonial deposition, primarily the two-page declaration marked as Exh. 4 and to various articles regarding BLACKBELT TV.

Evidence of acquired distinctiveness can include the length of use of the mark, advertising expenditures, sales, survey evidence, and affidavits asserting source-indicating recognition. See *In re Bongrain International Corp.*, 894 F.2d 1316, 13 USPQ2d 1727 (Fed. Cir. 1990). See also *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 24 USPQ2d 1161, 1166 (2d Cir. 1992)("Among the factors that we have found relevant to this inquiry in the past are advertising expenditures, consumer studies, sales success, unsolicited media coverage, attempts to plagiarize and length and exclusivity of use. … There are undoubtedly other types of evidence that would also be relevant to a claim of secondary meaning.").

In this case, the record contains no evidence of sales, numbers of customers, surveys or affidavits from third parties asserting source-indicating recognition. There also is no indication as to how many visitors have visited opposer's websites. Although Mr. Wexler does state in his summary judgment declaration that opposer has "expended at least … $3,000,000 in promotion, wages, distribution contracts, affiliation agreements, production costs, legal fees, and the like," Wexler dep. exh. 4, para. 7, there is

no indication as to how much of the $3,000,000 opposer spent on advertising expenditures and for what period of time, let alone whether and/or how the advertising featured opposer's designation. Also, although Mr. Wexler stated that opposer has used BLACKBELT TV since October 1998, such use for twelve years in and of itself does not establish acquired distinctiveness. As applicant points out at p. 15 of its brief, "there is no documentary evidence, such as television footage, promotion documents, promotional footage, a snapshot image of any broadcast(s) showing the mark as purportedly used in commerce by Opposer, broadcast records, or additional testimonial evidence from any of his co-employees, viewers or people who have worked in the cable TV industry to corroborate Opposer's claim …." Mr. Wexler did not provide any testimony about whether opposer's use is substantially exclusive. In addition to opposer, applicant has asserted it has used BLACKBELT TV; the Board has stated in the case of *Flowers Industries Inc. v. Interstate Brands Corp.*, 5 USPQ2d 1580, 1588 – 1589 (TTAB 1987), that "long and continuous use alone is insufficient to show secondary meaning where the use is not substantially exclusive." See also *Levi Strauss & Co. v. Genesco, Inc.*, 742 F.2d 1401, 222 USPQ 939, 940 – 941 (Fed. Cir. 1984) ("when the record shows that purchasers are confronted with more than one (let alone numerous) independent users of a term or device, an

20

application for registration under Section 2(f) cannot be successful, for distinctiveness on which purchasers may rely is lacking under such circumstances.") Additionally, Mr. Wexler's statement at paragraph 9 of his declaration that "BLACKBELT TV has received considerable press in its endeavor to launch a network to broadcast entertainment programming … including articles in the Wall Street Journal, The Hollywood Reporter, The New York Times, magazines such as Maxim, Forbes, Esquire, TV Guide, and Men's Journal, among others," is not persuasive; the articles have limited probative value because they all indicate that opposer is *gearing up* to provide a cable television channel, are from a limited time period (2002 – 2003), are few in number and say nothing about the services pleaded in the complaint and which opposer relies on in claiming priority. Thus, for the reasons set forth above, we find that opposer has not established that its designation has acquired distinctiveness prior to the filing date of applicant's application. Because opposer cannot establish its priority, a necessary element of the ground of likelihood of confusion, opposer's priority and likelihood of confusion claim is dismissed.

*Non-use of Applicant's Mark*

We next consider opposer's claim that applicant is not offering and has never offered the services which are

recited in its application.  Opposer, in its main brief,

relies on (i) the district court's finding that applicant

had not used its mark in commerce, maintaining "[t]his

ruling precludes the necessity of proving the Applicant did

not use their mark in commerce," and (ii) the following

trial testimony of opposer's president:

> Q.  Do you know what products they're supposed to
> be putting out?
>
> A.  No.
>
> Q.  Have you seen any television shows or
> television channels produced by Metronome?
>
> A.  No.
>
> Q.  In your experience dealing with the cable
> market, have you found that Metronome's Black Belt
> TV is producing anything for any cable network?
>
> A.  No.
>
> Q.  Do you have any reason to believe that
> Metronome's Black Belt TV is actually producing or
> airing any sort of television product?
>
> A.  No.

In discussing its non-use claim, opposer did not address any

of the testimony or documentary evidence that applicant

placed in the record.

As the plaintiff in this proceeding, opposer bears the

burden of proof which encompasses not only the ultimate

burden of persuasion, but also the obligation of going

forward with sufficient proof of the material allegations of

the notice of opposition, which, if not countered, negate

applicant's right to a registration.  See *Sanyo Watch Co.,*
*Inc. v. Sanyo Elec. Co., Ltd.*, 691 F.2d 1019, 215 USPQ 833
(Fed. Cir. 1982).  See also, *Clinton Detergent Co. v.*
*Proctor & Gamble Co.*, 302 F.2d 745, 133 USPQ 520, 522 (CCPA
1962) ("[o]pposer … has the burden of proof to establish
that applicant does not have the right to register its
mark").

In our December 20, 2007 order, we addressed the
question of whether the district court's statement that
applicant "has been unable or unwilling to present any
evidence, beyond its CEO's assertion, that the 'Black Belt
TV mark was ever used'" has any claim or issue preclusive
effect in this case.  We concluded that "the doctrine of
issue preclusion is inapplicable to opposer's pleaded claim
that applicant 'is not offering and has never offered' the
involved services under the mark in applicant's application"
because the district court's finding was based on the word
mark BLACK BELT TV and not the word and design mark in the
involved application.  December 20, 2007 order at 12 – 13.
We reiterated that conclusion in our September 30, 2008
order addressing opposer's request for reconsideration.  Our
conclusion is the law of the case, and we will not revisit
our conclusion.[17]  Opposer is therefore left with the brief

---

[17] Because the Board's orders were issued well in advance of
trial, opposer was on notice prior to trial that it could not

and obviously biased testimony of its president, Mr. Wexler, set forth above.  This evidence falls short of satisfying opposer's burden of going forward with evidence supporting the material allegations of its claim that applicant is not offering and has never offered the services which are recited in its application.  Simply put, we are not persuaded that applicant has not used its mark in commerce simply because Mr. Wexler says he is not familiar with applicant and its television programming services.

Opposer's claim of non-use of applicant's mark is dismissed for failure of proof.

*Fraud*

The third ground for opposition is fraud in connection with the filing of two statements alleging dates of first use with the Office, one during the ex parte prosecution of the application and one during the pendency of this proceeding, in which applicant stated, under oath, that the mark was used in connection with the services in the application on various dates.  According to opposer, the mark was not used in connection with the services recited in the application as of any of the dates alleged by applicant.

The Court of Appeals for the Federal Circuit, our primary reviewing court, handed down *In re Bose Corp*., 530

---

rely on the finding of the district court, and that it would have to submit evidence to substantiate its claim.

F.3d 1240, 91 USPQ2d 1938, 1939 (Fed. Cir. 2009), prior to the time when the parties filed their briefs in this proceeding.  In *Bose*, the court made it clear that for a fraud claim to be successful, a plaintiff must prove by clear and convincing evidence that a defendant knowingly made a false statement with the intent to deceive the USPTO. *Bose*, 91 USPQ2d at 1941.  It also set out the relevant standard for proving fraud:

> "Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application."  Torres v. Cantine Torresella S.r.l., 808 F.2d 46, 48 [1 USPQ2d 1483] (Fed. Cir. 1986).  …  Indeed, "the very nature of the charge of fraud requires that it be proven 'to the hilt' with clear and convincing evidence.  There is no room for speculation, inference or surmise and, obviously, any doubt must be resolved against the charging party."  Smith Int'l, Inc. v. Olin Corp., 209 USPQ 1033, 1044 (TTAB 1981).

*Id*. at 1939.

In support of its claim, opposer again relies on the finding of the district court in the civil proceeding that applicant "has been unable or unwilling to present any evidence, beyond its CEO's assertion, that the 'Black Belt TV' mark was ever used …."  Opposer's notice of reliance, decision at 2.  As discussed above, this finding has no issue preclusive effect in this proceeding and the law of the case doctrine provides that we do not now find a preclusive effect when we previously did not.

25

Because opposer has not demonstrated that any statements made in applicant's statements of use were false, let alone proved to the hilt an intention by applicant to deceive the USPTO, opposer's claim of fraud must fail. Its claim must also fail because opposer has not established that applicant's stated reason for seeking to change its use dates - that after retaining counsel and after counsel's investigation, applicant discovered its stated dates were not accurate – is false and that applicant intended to deceive the USPTO. The trial record includes evidence of use in commerce earlier than the first use dates set forth in applicant's original amendment to allege use, thus establishing the basis for applicant's desire to amend the dates of use.

Opposer's fraud claim is dismissed.

**DECISION:** The opposition on the grounds of likelihood of confusion, non-use and fraud is dismissed; and applicant's motion to amend its first use dates is denied.