**HYDRO–DYNAMICS, INC., Appellant,**

v.

**GEORGE PUTNAM & COMPANY, INC., Appellee.**

**Appeal No. 86–1184.**

United States Court of Appeals, Federal Circuit.

Feb. 11, 1987.

---

James H. Laughlin, Benoite, Smith & Laughlin, of Arlington, Va., argued for appellant.

James B. Middleton, of Decatur, Ga., argued for appellee.

Before SMITH, Circuit Judge, BENNETT, Senior Circuit Judge, and NEWMAN, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Hydro-Dynamics, Inc. appeals the decision of the Trademark Trial and Appeal Board of the United States Patent and Trademark Office, sustaining an opposition filed by George Putnam & Company, Inc., thereby denying to Hydro-Dynamics federal registration of the mark WATERCOLORS for waterbed linens. *George Putnam & Co. v. Hydro-Dynamics, Inc.*, 228 USPQ 951 (TTAB 1986). We affirm the Board's decision.

### Background

Hydro-Dynamics is a manufacturer of waterbed linens that sells to both wholesale and retail markets. At a date before September 1980 a consultant, hired by Hydro-Dynamics for this purpose, proposed the trademark WATERCOLORS and designed boxes upon which the mark was affixed. Norman K. Brown, president of Hydro-Dynamics, testified that he and his staff liked the mark, discussed the expense and promotion of it, and decided to obtain the reaction of a distributor:

We wished to get a customer point of view and we sent the sample out to N.C.F. Distributing in Colorado for their review.

N.C.F. Distributing was an independent distributor located in Greeley, Colorado. Hydro-Dynamics shipped to N.C.F. a box of "samples", as identified on a shipping record dated September 24, 1980, from Hydro-Dynamics' location at Lake Havasu City, Arizona. The boxes were "handmade" and bore the mark WATERCOLORS and a colorful design, and contained waterbed sheets. No charge was made to the distributor, but Mr. Brown testified that he was told the sheets were sold by the distributor "during the Christmas season", which he stated was September and October for sales to retailers. No documentation of such sale is in the record.

There was testimony that officials at Hydro-Dynamics phoned the distributor to get its "opinion" of the trademark and were told that the distributor was "favorably impressed", after which Hydro-Dynamics "started ... to push ahead with supporting an advertising campaign ... and started to contact box manufacturers to place ... orders for ... cartons". Documentary evidence of such activities before December 1980 or January 1981 is not of record. The earliest evidence of advertising by Hydro-Dynamics showing the mark WATERCOLORS was the March 1981 issue of *Waterbed* magazine.

Hydro-Dynamics applied for federal trademark registration under the Lanham Act, 15 U.S.C. §§ 1051–1127, on September 23, 1981. The application stated first use in interstate commerce "at least as early as February, 1981." Putnam opposed the registration, and established the unchallenged date of its own first use in interstate commerce of November 19, 1980.

The Board found that Hydro-Dynamics did not decide to adopt the mark until after it received a favorable reaction from its distributor, and thus concluded that the September 24, 1980 shipment to the distributor was "not a bona fide commercial transaction". *George Putnam*, 228 USPQ at 953. On this basis the Board held that Hydro-Dynamics had not established a prior right to the mark by clear and convincing evidence.

## The Evidentiary Burdens

The Board held that Hydro-Dynamics was "under a heavy burden" to carry the date of first use back to a date prior to that stated in its application for registration, and that its proof of such an earlier date must be "clear and convincing". *Id.*

■ Hydro-Dynamics was the first applicant for federal registration. This carried no substantive advantage in law; the mere act of filing an application for federal trademark registration is accompanied by no statutory presumption of entitlement. But it gave Hydro-Dynamics a procedural advantage: it placed on Putnam the burden of pleading facts and going forward with proof of its claim to prior use of the trademark. *See Liqwacon Corp. v. Browning-Ferris Indus., Inc.*, 203 USPQ 305, 317 (TTAB 1979); Vandenburgh, *Trademark Law and Procedure* § 10.31, at 346 (2d ed. 1968) ("opposer ... is in the position of a plaintiff").

■ In the usual case the decision as to priority is made in accordance with the preponderance of the evidence. The common law and the Lanham Act require that trademark ownership be accorded to the first bona fide user. *See New England Duplicating Co. v. Mendes*, 190 F.2d 415, 417, 90 USPQ 151, 152 (1st Cir.1951) ("the exclusive right to the use of a mark ... claimed as a trademark is founded on priority of appropriation").

Although the Board has occasionally stated that the burden upon the challenger must be met by "clear and convincing evidence", and that "any doubt must necessarily be resolved against opposer", *Liqwacon*, 203 USPQ at 317, such heavier burden does not apply, for the simple reason that the act of filing a trademark application is accompanied by no legal presumption whatsoever. Note, for example, our predecessor court's comment, reflecting the absence

of such a presumption, in *Rockwood Chocolate Co. v. Hoffman Candy Co.*, 372 F.2d 552, 553, 152 USPQ 599, 600 (CCPA 1967), that "our agreement with this conclusion [of prior use by opposer] is predicated very largely on the weaknesses of the record on behalf of [the applicant]"; that is, the court determined prior use by the preponderance of the evidence.

Putnam established that it had used the mark WATERCOLORS in commerce prior to Hydro-Dynamics' filing date and also prior to Hydro-Dynamics' date of first use stated in its application. Thus Hydro-Dynamics can not prevail merely by proving the date of first use stated in its application for federal registration. It must establish an even earlier date.

■ Where an applicant seeks to prove a date earlier than the date alleged in its application, a heavier burden has been imposed on the applicant than the common law burden of preponderance of the evidence. *See Rockwood Chocolate*, 372 F.2d at 554, 152 USPQ at 600 ("proof of such earlier date must be clear and convincing"); *Elder Mfg. Co. v. International Shoe Co.*, 194 F.2d 114, 118, 92 USPQ 330, 332 (CCPA 1952) ("proof must be clear and convincing"). The reason for such an increased evidentiary burden, supported by common sense, is that a change of position from one "considered to have been made against interest at the time of filing of the application", *Stanspec Co. v. American Chain & Cable Co.*, 531 F.2d 563, 567, 189 USPQ 420, 424 (CCPA 1976), requires enhanced substantiation.

■ The PTO allows an applicant to state a date of first use not as a date certain but, as in the case at bar, "at least as early as" a named date. The Trademark Manual of Examining Procedure § 806.08 (1st ed. 1974) states that such "indefinite phraseology" is "not considered to be misleading as it does serve to give notice that, when called upon to do so, applicant may undertake to prove a date earlier than the one specifically set forth." Such statement, however, does not mitigate the increased burden upon the applicant if the date originally asserted is too late to prevail against an opposer. The burden thus rested with Hydro-Dynamics to prove an earlier date by clear and convincing evidence.

## Analysis

■ As defined in the Lanham Act, a trademark

> includes any word, name, symbol, or device or any combination thereof *adopted and used* by a manufacturer or merchant to identify and distinguish his goods ... from those manufactured or sold by others....

15 U.S.C. § 1127 (emphasis added). The requirements of both adoption and use devolve from the common law; trademark rights in the United States are acquired by such adoption and use, not by registration. *Armstrong Co. v. Nu-Enamel Corp.*, 305 U.S. 315, 334, 59 S.Ct. 191, 200, 83 L.Ed. 195 (1938); *United States v. Steffens*, 100 U.S. (10 Otto) 82, 92, 25 L.Ed. 550 (1879). Concomitantly, the right to register a mark flows from and follows its adoption and use in trade. *Blue Bell, Inc. v. Farah Mfg. Co.*, 508 F.2d 1260, 1265–66, 185 USPQ 1, 5 (5th Cir.1975).

■ "Adoption" is a threshold condition to the establishment of trademark rights. *See Kohler Mfg. v. Beeshore*, 59 F. 572, 576 (3d Cir.1893) (one must intend "to adopt [the mark] as a trademark"). "Mere invention, creation, or discussion of a trademark does not create priority rights", Gilson, *Trademark Protection and Practice* § 3.03, at 3–46.5 (citing *Rolley, Inc. v. Younghusband* 204 F.2d 209, 211–12, 97 USPQ 252, 254 (9th Cir.1953)).

■ Whether a trademark has been "adopted" is a factual finding whose resolution may include elements of subjective intent. As in such questions generally, intent is illuminated by the surrounding circumstances and objective evidence. Hydro-Dynamics argues that its September 1980 shipment to a distributor is itself evidence of adoption, sufficient for the purposes of the statute. Putnam points to

Hydro-Dynamics' admission as to its intent and to the evidence that Hydro-Dynamics did not begin its advertising campaign nor purchase the materials for manufacture of boxes bearing the trademark until after receiving the distributor's favorable opinion.

The Board found that the September 1980 shipment was solely for obtaining an opinion of the mark prior to its adoption, and that Hydro-Dynamics did not adopt the mark until after the distributor's favorable reaction. *George Putnam*, 228 USPQ at 953. On the record before us, there is no clear error in this finding.

Hydro-Dynamics argues that it is sufficient that the goods were "transported in commerce". It bases its argument on § 45 of the Lanham Act, which states:

> For the purposes of this chapter a mark shall be deemed to be used in commerce ... when it is placed ... on the goods ... and the goods are sold or transported in commerce....

15 U.S.C. § 1127. Hydro-Dynamics argues that a single shipment in interstate commerce is sufficient to support registration, citing *Fort Howard Paper Co. v. Kimberly-Clark Corp.*, 390 F.2d 1015, 1017, 157 USPQ 55, 56 (CCPA), *cert. denied*, 393 U.S. 831, 89 S.Ct. 99, 21 L.Ed.2d 101 (1968), and indeed this is the case, provided that the mark was adopted and used as a trademark.

Hydro-Dynamics argues that the linens shipped to N.C.F. Distributing were sold by the distributor, and that this and the uncontested fact that the trademark was indeed adopted by Hydro-Dynamics, even if after the shipment (the record does not discuss when this occurred), are sufficient to establish that the September shipment was a use in commerce for purposes of registration. We disagree. Although a party may establish that a shipment in commerce was a bona fide commercial transaction by evidence of subsequent events, *see Fort Howard*, 390 F.2d at 1017, 157 USPQ at 57; *Seiberling Rubber Co. v. Dayton Rubber Co.*, 110 USPQ 556, 559 (Comm'r.Pats.1956), the purpose of the shipment can not be changed retroactively. *See also Blue Bell, Inc. v. Jaymar-Ruby, Inc.*, 497 F.2d 433, 437, 182 USPQ 65, 68 (2d Cir.1974) ("Congress clearly intended to require some *bona fide* commercial utilization [of the mark] prior to ... registration").

Subsequent adoption of the mark does not convert a shipment for the purpose of advisory consultation on the merits of a proposed trademark into a bona fide use of the mark in commerce. The Board correctly held that Hydro-Dynamics failed to establish, by clear and convincing evidence, adoption and use prior to Putnam's date of November 19, 1980.

AFFIRMED.