LOWELL INTERNATIONAL
COMPANY, Appellant,

v.

William S. QUIMBY, Appellee.

No. 02–1392.

United States Court of Appeals,
Federal Circuit.

DECIDED: June 4, 2003.

Before RADER, Circuit Judge, PLAGER, Senior Circuit Judge, and GAJARSA, Circuit Judge.

PER CURIAM.

Lowell International Company (Lowell) appeals from the decision of the Trademark Trial and Appeal Board (Board) sustaining William S. Quimby's (Quimby) opposition and refusing registration of the "1–800–REFERRAL" trademark to Lowell. Because substantial evidence supports the Board's decision that Lowell showed neither a first use date prior to Quimby's stipulated first use date, nor continuous use of the "1–800–REFERRAL" trademark since any such first use, this court *affirms*.

I

Lowell filed an intent-to-use service mark application, Serial No. 75/317,158 (the '158 application), on June 30, 1997. The '158 application was later published in the Official Gazette on May 26, 1998. Lowell's application sought to register the "1–800–REFERRAL" mark for "provision of information, matchmaking and concierge services via telephone and computer assisted means." Meanwhile, Quimby claimed to be using "1–800 4 REFERRAL" as a word mark and "800 4 REFERRAL.com" as a logo mark. Therefore, on July 30, 1998, Quimby filed an opposition to registration of Lowell's mark on the ground of priority of use and likelihood of confusion under section 2(d) of the Lanham Act. *See* 15 U.S.C. § 1052(d) (2000). Both parties stipulated that Quimby first used his marks in May 1997, and

thereafter, used these marks continuously in commerce. Lowell further acknowledges that using the "1–800–REFERRAL" mark simultaneously with Quimby's marks would result in a likelihood of confusion. However, Lowell argues that his use of the "1–800–REFERRAL" mark before May 1997, is sufficient to establish priority of use.

The only issue addressed by the Board was whether Lowell could establish use of his mark prior to Quimby's stipulated first use in May 1997. The Board determined that Lowell could only successfully show a prior use date by proffering clear and convincing evidence that is not characterized by contradictions, inconsistencies, and indefiniteness. *See Hydro–Dynamics, Inc. v. George Putnam & Co.,* 811 F.2d 1470, 1473, 1 USPQ2d, 1772, 1773 (Fed. Cir.1987). After carefully considering all evidence of record, the Board found that Lowell failed to establish that he made continuous commercial use of the "1–800–REFERRAL" mark prior to Quimby's stipulated first use. Therefore, the Board sustained Quimby's opposition and refused to register the "1–800–REFERRAL" mark to Lowell. Lowell timely appealed to this court, which has jurisdiction under 15 U.S.C. § 1071(a).

II

This court reviews the Board's findings of fact under the "substantial evidence" standard. *On–Line Careline, Inc. v. Am. Online, Inc.,* 229 F.3d 1080, 1085, 56 USPQ2d 1471, 1475 (Fed.Cir.2000). Therefore, the Board's "factual findings will be upheld unless they are unsupported by substantial evidence." *Id.* (citing *Recot, Inc. v. M.C. Becton,* 214 F.3d 1322, 1327, 54 USPQ2d 1894, 1897 (Fed.Cir.2000) (internal quotation marks omitted)). To be entitled to registration of a mark, the ap-

plicant must show adoption and usage in trade. *See Hydro–Dynamics,* 811 F.2d at 1473; *see also La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.,* 495 F.2d 1265, 1271–72 (2d Cir.1974). Furthermore, proof of bona fide use of a trademark may overcome a claim of nonuse where the trademark proponent can "demonstrate that his use of the mark has been deliberate and continuous, not sporadic, casual or transitory." *La Societe Anonyme,* 495 F.2d at 1272 (citation omitted).

## III

Lowell presented his case to the Board during an oral hearing in which Lowell was the sole witness appearing on his behalf. The Board reasoned that oral testimony of a single witness may establish priority if it is sufficiently probative. The Board further noted that "[o]ral testimony is obviously strengthened by corroborative documentary evidence, and it should not be characterized by contradictions, inconsistencies, and indefiniteness but should carry with it conviction of its accuracy and applicability." *See B.R. Baker Co. v. Lebow Bros.,* 32 C.C.P.A. 1206, 150 F.2d 580, 583, 66 USPQ 232, 236 (CCPA 1945) (citation omitted). Following this analysis, the Board reviewed Lowell's oral testimony regarding Lowell's use of the mark, and the corroborative documentary evidence submitted by Lowell.

Lowell argues that his mark should be afforded protection because he never discontinued use of the mark. This contention, however, is inconsistent with record evidence, as Lowell admits to periods of non-use. Lowell argues that as a policy matter, he should be able to establish bona fide use where there have been numerous uses over a ten-year period. In assessing Lowell's testimony of use over this ten-year period, however, the Board character-

ized it as "inconsistent, contradictory and vague." The Board also mentions ethical weaknesses in Lowell's testimony. Such considerations of credibility are within the prerogative of the Board, and on review, this court defers to the Board regarding such considerations. *See Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.,* 892 F.2d 1021, 1027, 13 USPQ2d 1307, 1312 (Fed.Cir.1989). Therefore, despite Lowell's assertions, the Board found that:

> The only documentary evidence of the promotion of such service at about that time consists of two solicitation letters which applicant sent in July 1989 to the Dental Society of New York and the Florida Bar.... The 1–800–REFERRAL mark was used in connection with these proposals. These solicitations did not result in any agreement to participate. To the contrary, some question was raised as to the ethical considerations of such referrals.... The only remaining documentary evidence consists of an advertisement placed in the Chicago Tribune for a travel agency referral in July 1997, a date later than opposer's stipulated date of first use and far removed from applicant's earlier claimed use.... Thus, we must rely solely upon applicant's oral testimony of continuing use of its mark from 1987, or later in the 1980's, until 1997.

Using its discretion as a fact-finder, the Board determined that the oral testimony by Lowell was insufficient, without corroborative evidence, to support his claim of continued use from the late 1980's until 1997. The Board considered Lowell's oral testimony regarding solicitations to doctors, lawyers, and dentists at the end of the 1980's or early 1990's; flier advertisements for a 3–D camera that Lowell would sometimes sell himself and at other times refer customers to other sellers; and final-

ly, an effort to use the mark in connection with a travel agency.

Regarding the continuity of use, the Board found that "[a]pplicant admitted that there were periods during the 1990's when, for more than a year, the mark was not actively being used." Regarding the amount of use, the Board stated, "Mr. Lowell's testimony is inconsistent, contradictory and vague." Finally, regarding the character of the use to the stated purpose of the mark ("provision of information, matchmaking and concierge services via telephone and computer assisted means,") the Board stated: "we find often conflicting, and at best sporadic evidence as to the actual rendering of referral services in connection with the 1–800–REFERRAL mark."

The Board's findings denying Lowell priority of use are supported by substantial evidence of record. By analogy to patent law, this court has stated that "oral testimony by an alleged inventor asserting priority over a patentee's rights is regarded with skepticism, and as a result, such inventor testimony must be supported by some type of corroborating evidence." *Woodland Trust v. Flowertree Nursery*, 148 F.3d 1368, 1371, 47 USPQ2d 1363, 1366 (Fed.Cir.1998) (quoting *Price v. Symsek*, 988 F.2d 1187, 1194, 26 USPQ2d 1031, 1036 (Fed.Cir.1993)). Following this line of thought, the Board applied a similar, albeit more lenient standard. Though the Board considered Lowell's unsupported oral evidence, the Board is not required to find such oral evidence persuasive. It is within the Board's discretion to accept or reject uncorroborated oral testimony. Here, where Lowell could only produce two letters sent in 1989 as evidence of continuous and sufficient use of the 1–800–REFERRAL mark, and admitted to periods of non-use, the Board did not err by finding that such use insufficient to estab-lish common law rights to the desired service mark.

Lowell's suggestion that use of a mark during a ten-year period should, as a policy, constitute continuous use sufficient for common law protection fails to consider the primary policy of trademark law. As previously stated by this court, "The primary function of a trademark is to identify and distinguish the goods or services of one source from those sold by all others...." *Bellsouth Corp. v. DataNational Corp.*, 60 F.3d 1565, 1569, 35 USPQ2d 1554, 1557 (Fed.Cir.1995). Only actual, active use of the mark ensures that such an association can be made in the consumer's mind and "notifies other firms that the mark is so associated." *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 503 (7th Cir. 1992). Lowell's suggestion would have the court overlook the quantity, continuity, and quality of use of the contested mark. Not only has Lowell admitted to periods of non-use of the mark, Lowell presented scant record evidence of actual, active use of the mark by himself for advertising, or by customers in requesting services. The Board's determination that such evidence was not clear and convincing evidence of continuous use is supported by substantial evidence.

Therefore, Board's decision to sustain Quimby's opposition and refuse registration of Lowell's mark is affirmed.