This Opinion is a
Precedent of the TTAB

Mailed: September 8, 2017

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

*Julie A. Moreno*
*v.*
*Pro Boxing Supplies, Inc.*
_____

Opposition No. 91214580
Opposition No. 91214877
Cancellation No. 92058878
(Consolidated Cases)
_____

David D. Spencer of The Spencer Law Office,
    for Julie A. Moreno.

Christopher L. Rudd of the Rudd Law Firm,
    for Pro Boxing Supplies, Inc.

_____

Before Bergsman, Greenbaum and Larkin,
    Administrative Trademark Judges.

Opinion by Greenbaum, Administrative Trademark Judge:

Pro Boxing Supplies, Inc. ("Pro Boxing"), the defendant in each proceeding, owns

a registration for the mark CASANOVA (in standard characters),[1] and applications

---

[1] Reg. No. 4350212 issued on June 11, 2013 (filed October 22, 2012), claiming December 31, 1993, as the date of first use anywhere and use in commerce. The entire identification of goods is: "sporting equipment and trainer's supplies, namely, boxing gloves; boxing rings; boxing equipment, namely, handwraps, athletic tape, punching mitts and striking shields;

for  [2] and  [3] for various items of boxing

equipment, the most relevant of which are boxing gloves, in International Class 28.

---

punching bags; protective boxing gear, namely, body protectors, groin protectors, head protectors, mouth guards and shin/instep guards."

[2] Application Serial No. 85885946 ("'946 application") was filed on March 25, 2013, based upon Pro Boxing's claim of first use anywhere and use in commerce since at least as early as January 30, 2003. The entire identification of goods is: "Athletic equipment, namely, guards for boxing and marital [sic] arts; Athletic equipment, namely, hand wraps; Athletic equipment, namely, mouth guards; Athletic equipment, namely, striking shields; Body protectors for groin, head, moth [sic] shin/instep; Boxing bags; Boxing gloves; Boxing rings; Sports equipment for boxing and martial arts, namely, boxing gloves, boxing bags, punching mitts, belly protectors, groin protectors and shin guards; Sports equipment for boxing and martial arts, namely, boxing gloves, mixed martial arts gloves, punching mitts, and shin guards."

The '946 application includes the following description of the mark: "The mark consists of an oval shape with the word 'SPORTS' inside the oval and on top of a concave shape, and below the word 'SPORTS' is 'CASANOVA', with 'www.casanovaboxing.com' below the word 'CASANOVA' in a convex shape and the word 'PROFESSIONAL' inside a semi-circle." Color is not claimed as a feature of the mark. Pro Boxing disclaimed the exclusive right to use the words SPORTS and PROFESSIONAL.

[3] Application Serial No. 85886437 ("'437 application") was filed on March 26, 2013, based upon Pro Boxing's claim of first use anywhere and use in commerce since at least as early as January 30, 2003. The identification of goods includes "Athletic equipment, namely, striking bags," and otherwise is identical to that in the '946 application.

The '437 application also includes the following description of the mark: "The mark consists of a rectangle with an arc shape at the top and below the arc is the word 'DEPORTES' with an arc shape below the word 'DEPORTES' and above the word 'CASANOVA', with the word 'PROFESSIONAL' below the word 'CASANOVA' with an arc shape in the opposite direction followed by 'www.casanovaboxing.com' and another arc shape below 'www.casanovaboxing.com'." Color is not claimed as a feature of the mark. Pro Boxing disclaimed the exclusive right to use the words DEPORTES and PROFESSIONAL. The application includes a translation statement that "[t]he English translation of 'DEPORTES' in the mark is 'SPORTS'."

Julie A. Moreno ("Moreno") seeks to cancel the registration for the standard character mark, and opposes registration of the two composite word and design marks. As grounds in each proceeding,[4] Moreno alleges likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), based on common law use of the mark CASANOVA by non-party Deportes Casanova, "a sole proprietorship and producer of boxing and related equipment in Mexico City, Mexico," and by herself, as exclusive licensee of Deportes Casanova's intellectual property in the United States.[5] Moreno alleges that she sells boxing equipment, manufactured in Mexico by Deportes Casanova, through the Internet.[6] She further alleges that Deportes Casanova owns a registration in Mexico for the following "Deportes Casanova Mark" .[7] In addition, Moreno "claims priority" "for [herself] and Deportes Casanova … based on the common law usage of the Deportes Casanova Mark" dating to at least 1972,

---

[4] With the exception of Moreno's priority and likelihood of confusion and nonuse claims, which were allowed to proceed, the April 3, 2014 Board Order struck all other claims as having been insufficiently pleaded. 7 TTABVUE 4-5. Moreno's nonuse claim is deemed waived because she did not pursue the claim at trial. *See Alcatraz Media, Inc. v. Chesapeake Marine Tours Inc. dba Watermark Cruises*, 107 USPQ2d 1750, 1753 n.6 (TTAB 2013), *aff'd mem.*, 565 F. App'x 900 (Fed. Cir. 2014).

[5] 1 TTABVUE 5-8, ¶¶ 4, 5, 9-11. References to the record are to the TTABVUE file in Opposition No. 91214877, which the Board designated the "parent case." *See* April 3, 2014 Board Order, 7 TTABVUE 3.

[6] 1 TTABVUE 6, ¶ 5.

[7] 1 TTABVUE 6, ¶ 7. In her reply brief, Moreno confirms that she "has made no claim whatsoever that the use of the Deportes Casanova mark in Mexico should be considered. Plaintiff's evidence relates entirely to use of the disputed marks in the United States." 38 TTABVUE 8.

via sales of boxing and related equipment to "boxers, trainers, gyms and others in the United States. Deportes Casanova boxing gloves were worn by Sylvester Stallone in the first 'Rocky' movie, released in 1976."[8]

In its answers, Pro Boxing denied the salient allegations, and asserted, as an affirmative defense, abandonment by Moreno "or those in privity with [her.]"[9]

Both parties submitted briefs, and Moreno submitted a reply brief.

## I.   Evidentiary Objection

Pro Boxing objected to the depositions on written questions of Moreno's witnesses Willie Jensen, Bruce Silverglade, and Hector Roca, because in each instance, Moreno did not mail a copy of the notice and copies of all questions to the designated officer until nearly eleven months "after the last date when questions, objections, or substitute questions may be served," in contravention of Trademark Rule 2.124(e), 37 C.F.R. § 2.124(e).[10] However, rather than renewing the objections in its brief, Pro Boxing addressed the testimony of each deponent on its merits, thus waiving its objections.[11] *See* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE ("TBMP") § 707.04 (June 2017) ("[B]y failing to preserve the objection in its brief on the case, or in an appendix to the brief on the case or in a separate statement of

---

[8] 1 TTABVUE 6, ¶ 9.

[9] 4 TTABVUE 4, ¶¶ D and E. In its brief, Pro Boxing also argues that these proceedings are barred by laches. However, Pro Boxing did not plead laches as a defense in any of its answers or pursue this defense at trial.

[10] 14 TTABVUE (Objection to Jensen Test.); 15 TTABVUE (Objection to Silverglade Test. and Roca Test.).

[11] 37 TTABVUE 19.

objections filed with the brief on the case, a party may waive an objection that was seasonably raised at trial.") and the cases cited therein.

Although we have considered the three depositions, the official transcripts of Bruce Silverglade and Hector Roca do not indicate, by number, the questions and cross questions to which the witness responds. *See* Trademark Rule 2.124(e) ("The officer designated in the notice [of a testimonial deposition upon written questions] shall take the testimony of the witness in response to the questions and shall record each answer immediately after the corresponding question."). This oversight made it unduly difficult for the Board to decipher witness testimony that referred back to answers to prior questions, and to cite particular questions or cross questions when discussing the testimony of these witnesses. The better practice is for the deposing official to state the number of each direct question (or cross question, redirect question, or recross question) before asking the direct question (or cross question, etc.).

## II.    Record

The record includes the pleadings and, by operation of Trademark Rule 2.122(b)(1), 37 C.F.R. § 2.122(b)(1), the files of the subject registration and applications.

Moreno submitted the testimony on written questions, with accompanying exhibits, of Marcelino Gonzalez, the owner of Deportes Casanova, and his son, Ambar

Gonzalez;[12] boxing trainers Gregorio Vargas Hernandez, Hector Roca Alvarado (referred to as "Hector Roca"), and Willie Jensen; and Bruce Silverglade, the owner of Gleason's Gym in New York. She also submitted notices of reliance on Pro Boxing's Responses to Moreno's First Set of Interrogatories, screenshots from Pro Boxing's website, selected pages from the *Official Rocky Scrapbook*, and printouts from the Worldwide Guide to Movie Locations, www.movie-locations.com, for the 1976 movie "Rocky."

Pro Boxing submitted the testimony depositions, with accompanying exhibits, of its owner, Abdul Qubadi, and his brother, Sayed Qubadi, a martial arts instructor and customer of Pro Boxing.

## III.   Background

According to Marcelino Gonzalez and Ambar Gonzalez, non-party Deportes Casanova is a Mexican company that owns a trademark registration in Mexico for the mark  .[13] Deportes Casanova has manufactured boxing gloves in

---

[12] Marcelino Gonzalez testified that he and his son Ambar are the owners of Deportes Casanova. M. Gonzalez Test., 13 TTABVUE 9, Question No. 14. Ambar Gonzalez testified that Marcelino "acts as the owner, but we both make decisions," and that he does not have a title. A. Gonzalez Test., 12 TTABVUE 7, Question No. 2.

[13] A. Gonzalez Test., 12 TTABVUE 14, Question No. 29, and 12 TTABVUE 25-26, Cross Question No. 40. M. Gonzalez Test., 13 TTABVUE 26, Cross Question No. 40. The Mexican trademark registration was submitted as Exhibit E to each deposition. 12 TTABVUE 32, and 13 TTABVUE 34-35, respectively. However, this registration is of no probative value because it is written in Spanish, and Moreno did not provide a certified English translation. *See, e.g., Swiss Watch Int'l Inc. v. Fed'n of the Swiss Watch Indus.*, 101 USPQ2d 1731, 1734 n.8 (TTAB 2012) (printed publications submitted in a foreign language without translations are of

Mexico bearing this mark for more than 60 years.[14] Boxers and boxing trainers have used boxing gloves bearing this mark in the United States for many years.[15]

Deportes Casanova and Moreno entered into a license agreement on July 23, 2013.[16] The license agreement provides that "Deportes Casanova is the owner of all intellectual property associated with Deportes Casanova boxing gloves and other Deportes Casanova sports equipment," identifies the "intellectual property" as "including but not limited to the word mark 'Casanova' and the word and design mark consisting of an oval shape with the words 'Deportes Casanova', 'Profesional' and 'Hecho en Mexico' inside it (all such intellectual property being referred to collectively as the 'Intellectual Property')," and grants Moreno "the exclusive right and license to use the Intellectual Property in the United States of America," and to protect "the Intellectual Property through all appropriate legal means."[17] The full English translation of the license is reproduced below:

limited probative value); *Johnson & Johnson v. Obschestvo s ogranitchennoy; otvetstvennostiu "WDS"*, 95 USPQ2d 1567, 1570 n.3 (TTAB 2010) (a party who intends to rely at trial on business records in a foreign language must provide a translation).

[14] M. Gonzalez Test., 13 TTABVUE 10, Question No. 20.

[15] Jensen Test., 19 TTABVUE 8, Question No. 15 (Q: "[A]pproximately when did you first use or see used Deportes Casanova equipment in the United States?" A: "I first used it in 1968."). Roca Test., 18 TTABVUE 6-7 (reading from Ex. A, 18 TTABVUE 17: "I have personally used Deportes Casanova boxing gloves and equipment in the U.S.A. since 1979."). Silverglade Test., 17 TTABVUE 7 ("The gloves were used in my gym since 1982….").

[16] Moreno submitted a copy of the license agreement as Ex. B to the testimony of Ambar Gonzalez. A. Gonzalez Test., 12 TTABVUE 28.

[17] *Id.*

## Agreement

The undersigned [ _Deportes Casanova_ ] is the owner of all intellectual property associated with Deportes Casanova boxing gloves and other Deportes Casanova sports equipment (the "Casanova Equipment"), including but not limited to the word mark "Casanova" and the word and design mark consisting of an oval shape with words "Deportes Casanova", "Profesional" and "Hecho en Mexico" inside it (all such intellectual property being referred to collectively as the "Intellectual Property") . We hereby grant Julie Ann Moreno the exclusive right and license to use the Intellectual Property in the United States of America for such time as she continues to order and sell the Casanova Equipment, including exclusive rights to advertise and sell its products on the public Internet including rights to register and enforce internet domains such as www.casanovaboxing.com, www.casanovaboxingusa.com, www.casanovabox.com, etc. For the duration of this license we further appoint Julie Ann Moreno as our representative for protecting our Intellectual Property in the United States of America through all appropriate legal means, such representation to be at the cost and expense of Julie Ann Moreno unless otherwise agreed.

By her signature below Julie Ann Moreno accepts this license and appointment and acknowledges that this agreement gives her no ownership rights in the Intellectual Property other than the license granted hereby.

Julie Ann Moreno may assign her rights under this agreement to a company owned by her that is engaged in the selling of the Casanova Equipment.

DATED this _23_ day of _Julio_, 2013.

_Deportes Casanova  Delegacion cuauhtemoc_
[NAME OF COMPANY] _Estrella No. 91 Col. Guerrero_

By _Ambar Gonzalez Miranda_            _Julie Ann Moreno_
   [Signature]
Its _Director_
   [Title]

Exhibit B
Deposition on Written Questions
Witness: Ambar Gonzalez
Offered by Julie A. Moreno, Opposer and Petitioner

Trademark Opposition No. 91214580
Julie A. Moreno, Opposer and Petitioner v.
Pro Boxing Supplies, Inc., Applicant and Registrant

Page 1 of 2

_A G M_
witness initials

**Christa Byker**
Vice Consul

shown to witness Ambar
Gonzalez on 10/15/15

- 8 -

Pro Boxing is a California corporation that sells boxing and martial arts equipment,[18] including CASANOVA boxing gloves. From 1987 or 1988 until 1990, Pro Boxing sold CASANOVA boxing gloves that were made in Mexico, which it purchased from a vendor.[19] Pro Boxing began to manufacture and sell CASANOVA boxing gloves a few years later, after the vendor reported that the gloves he had been buying in Mexico no longer were available.[20]

## IV. Standing

Standing is a threshold issue that must be proven by the plaintiff in every *inter partes* case. To establish standing in an opposition or cancellation proceeding, a plaintiff must show "both a 'real 'interest' in the proceedings as well as a 'reasonable basis' for its belief of damage." *Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014) (quoting *ShutEmDown Sports, Inc. v. Lacy*, 102 USPQ2d 1036, 1041 (TTAB 2012)), *cert denied*, 135 S. Ct. 1401 (2015); *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025 (Fed. Cir. 1999); *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982). The Court of Appeals for the Federal Circuit has enunciated a liberal threshold for determining standing in Board proceedings. *Ritchie*, 50 USPQ2d at 1030.

---

[18] A. Qubadi Test., 35 TTABVUE 7.

[19] A. Qubadi Test., 35 TTABVUE 17-18.

[20] A. Qubadi Test., 35 TTABVUE 21-22.

Because Moreno has not pleaded and introduced a United States trademark registration, she must prove her standing through other evidence. Moreno bases her standing on the terms of the above license agreement with Deportes Casanova.

In its brief, Pro Boxing challenges Moreno's standing, claiming that the license agreement is invalid because it is a "naked" license that does not include a quality control provision, and because it lacks consideration.[21] These arguments are unpersuasive. The license agreement, which we reproduced in full English translation above, is a valid and enforceable contract between Deportes Casanova and Moreno, under which Deportes Casanova grants Moreno "the exclusive right and license to use" intellectual property associated with "Deportes Casanova boxing gloves and other Deportes Casanova sports equipment" in the United States "for such time as she continues to order and sell" such equipment. We find the quality control and consideration aspects are inherent in this particular license agreement because Moreno is buying the licensed products from Deportes Casanova and simply re-selling them.

Ambar Gonzalez testified that Deportes Casanova has sold boxing gloves[22] to customers in the United States "several times,"[23] and that "[w]e currently sell to Julie Moreno who lives in New York"[24] and have done so for "about four years or so."[25]

---

[21] 37 TTABVUE 11-14.

[22] A. Gonzalez Test., 12 TTABVUE 8-9, Question No. 8.

[23] A. Gonzalez Test., 12 TTABVUE 9, Question No. 11.

[24] A. Gonzalez Test., 12 TTABVUE 10, Question No. 12.

[25] A. Gonzalez Test., 12 TTABVUE 10, Question No. 13.

Ambar Gonzalez also testified that he signed the license agreement with Moreno,[26] and that the license is still in effect.[27] Likewise, Marcelino Gonzalez testified that he ships "boxing items, with the Casanova logo"[28] "directly to Mrs. Juliet [sic] in the United States."[29]

Bruce Silverglade, owner of Gleason's Boxing Gym, testified that he "agree[s] with the statements" that he made in a December 30, 2013 letter to Moreno, and would adopt them as his own.[30] Mr. Silverglade's letter includes the following statement: "The Deportes Casanova Boxing brand of boxing equipment has been on the scene for decades, and that equipment is now being sold in the Gleason's boxing Gym, by you, Julie Moreno of Casa de Moreno, LLC."[31] Similarly, boxing trainer Hector Roca testified that he agrees with the statements made in his January 8, 2014 letter to Moreno, and would adopt them as his own.[32] The letter includes the following statement: "I have personally used Deportes Casanova Boxing Gloves and equipment in the USA since 1979. Most recently[,] I have purchased Deportes Casanova Boxing equipment at Gleason's Boxing Gym, 77 Front St., Brooklyn, NY 11201, from you, Julie Moreno of Casa de Moreno, LLC."[33] In response to Cross Questions 1-3

[26] A. Gonzalez Test., 12 TTABVUE 12, Question No. 22.

[27] A. Gonzalez Test., 12 TTABVUE 12-13, Question No. 23.

[28] M. Gonzalez Test., 13 TTABVUE 10, Question No. 20.

[29] M. Gonzalez Test., 13 TTABVUE 12, Question No. 25.

[30] Silverglade Test., 17 TTABVUE 6-7, Question No. 5 (unnumbered).

[31] 17 TTABVUE 17, Ex. A to Silverglade Test.

[32] Roca Test., 18 TTABVUE 6, Question No. 5 (unnumbered).

[33] 18 TTABVUE 17, Ex. A to Roca Test.

(unnumbered), Mr. Roca testified that he bought boxing gloves bearing the Deportes Casanova name in the United States "last year" from "A lady. I don't remember the name."[34]

The testimony of Ambar Gonzalez and Marcelino Gonzalez, and the license agreement between Deportes Casanova and Moreno, establish that Moreno holds an exclusive license from Deportes Casanova to provide boxing gloves and boxing



equipment under the CASANOVA and                    marks in the United States. Further, the above testimony and evidence sufficiently support Moreno's allegations of a reasonable belief that Pro Boxing's registration, and continued registration, of the subject marks would cause her damage. As such, Moreno adequately has established that she has a real interest in, and thus standing to pursue, these proceedings. *See, e.g., Chicago Bears Football Club Inc. v. 12th Man/Tennessee LLC*, 83 USPQ2d 1073, 1075 (TTAB 2007) ("Because of opposers' proof of ownership or licensed use of the registered marks for BEARS and CHICAGO BEARS, we find that opposers each have established their standing to oppose."); *J.L. Prescott Co. v. Blue Cross Labs. (Inc.)*, 216 USPQ 1127, 1128 (TTAB 1982) (opposer found to have standing where it had assigned the mark and obtained an exclusive license from the assignee, and "the record shows that opposer used the mark prior to applicant and the opposer still uses it."); *Chem. New York Corp. v. Conmar Form Sys., Inc.*, 1

---

[34] 18 TTABVUE 8.

USPQ2d 1139, 1142 (TTAB 1986) ("It is obvious that opposer Chemical New York, as owner of the 'PRONTO' marks and registrations, and opposer Chemical Bank, as licensee and user of the marks, have such a 'real interest' in this proceeding."); *cf. Syngenta Crop Prot., Inc. v. Bio-Chek LLC*, 90 USPQ2d 1112, 1118, n.8 (TTAB 2007) (evidence of a licensee's use of a mark sufficient to establish standing "even if that use is purportedly based on a license which has not been clearly established in evidence.").

V.   Priority

There is no question that Moreno's pleaded mark CASANOVA for boxing gloves so resembles Pro Boxing's registered mark CASANOVA and the applied-for CASANOVA and design marks for boxing gloves that contemporaneous use by Moreno and Pro Boxing is likely to cause confusion, and Pro Boxing does not argue otherwise in its brief. The critical issue in this case therefore is which party has priority. In a case involving common law rights, such as this, "the decision as to priority is made in accordance with the preponderance of the evidence." *Hydro-Dynamics Inc. v. George Putnam & Co. Inc.*, 811 F.2d 1470, 1 USPQ2d 1772, 1773 (Fed. Cir. 1987).

A.  Pro Boxing may rely on its registration and applications.

For priority purposes in the cancellation proceeding, as the respondent, Pro Boxing may rely on its issued registration as proof of constructive use of the mark CASANOVA as of October 22, 2012, which is the filing date of its underlying application. *Hydro-Dynamics*, 1 USPQ2d at 1773; *Brewski Beer Co. v. Brewski Bros.*

*Inc.*, 47 USPQ2d 1281, 1284 (TTAB 1998). *See also* Trademark Act Section 7(c), 15 U.S.C. § 1057(c). Likewise, for priority purposes in the two opposition proceedings, as the applicant, Pro Boxing "may rely without further proof upon the filing date of its application as a 'constructive use' date for purposes of priority." *Syngenta Crop Prot.*, 90 USPQ2d at 1119. As noted above, Pro Boxing filed the '946 application on March 25, 2013, and the '437 application on March 26, 2013.[35]

B.  Moreno cannot establish priority based on the licensor's use.

As noted above, Moreno bases her priority claim on common law use of the mark CASANOVA by non-party Deportes Casanova, and not on any United States registration. Accordingly, Moreno must prove priority by establishing prior use at common law. *See, e.g., Chem. New York*, 1 USPQ2d at 1142 (where one of two[36] opposers owned the pleaded registrations, "priority of use does not arise as an issue as against Chemical New York in view of said party's ownership of the 'PRONTO' registrations. … However, inasmuch as opposer Chemical Bank is not the owner of

---

[35] Although Pro Boxing presented testimony concerning a 1992 date of first use of its registered mark CASANOVA on boxing gloves (A. Qubadi Test., 35 TTABVUE 22-23), which is earlier than the 1993 date of first use claimed in the application underlying that registration, Pro Boxing does not argue in its brief that it first used the mark in 1992. Rather, Pro Boxing states that this testimony "could be clearer," and that Abdul Qubadi "seems to be testifying about two different brands of Mexican boxing gloves, CLETO REYES and CASANOVA." 37 TTABVUE 21-22. *Cf. Hydro-Dynamics*, 1 USPQ2d at 1773 (a date of first use earlier than that alleged in the application is a change in position from one "considered to have been made against interest at the time of filing the application," and therefore must be established by "clear and convincing evidence."). In any event, in light of our disposition of these proceedings, it is not necessary to look beyond Pro Boxing's constructive use dates.

[36] The Board found that a third named opposer lacked standing because it merely held the "'PRONTO' software copyrights" and had "no interest whatsoever in the 'PRONTO' marks." *Id*. at 1142.

the registrations, and hence cannot rely on them herein, it was incumbent upon Chemical Bank to prove priority of use in order to prevail upon its claim under Section 2(d).") (internal citations omitted).

Moreno does not argue in her brief, and we do not find, that she personally used the licensed mark CASANOVA before Pro Boxing's constructive use of its involved marks.[37] Rather, Moreno frames the issue of priority as "[w]hether Plaintiff's licensor, and therefore Plaintiff, holds rights of priority over Defendant, not abandoned, to the word mark 'Casanova' and the word and design mark 'Deportes Casanova' as used in relation to boxing equipment."[38] We must therefore determine whether Moreno, a licensee, can claim priority based on the purported common law trademark rights of her licensor, Deportes Casanova, to the mark CASANOVA for boxing gloves. Although we have not had occasion to address this precise issue, we have encountered several cases in which a licensor and licensee were joint plaintiffs, and each was required to establish its own priority. For example, in *Chicago Bears Football Club*, 83 USPQ2d at 1075, the Chicago Bears Football Club owned a pleaded registration, and joint opposer NFL Properties was the licensing agent. Both opposers proved their priority, the Club via ownership of pleaded registrations properly made of record as well as evidence of sales, and NFL Properties via merchandise sales, and they jointly prevailed in their likelihood of confusion claim. The aforementioned *Chemical New*

---

[37] Nor would we expect Ms. Moreno to have made any such sales, given that she did not enter into the license agreement with Deportes Casanova until July 23, 2013, and nothing in the record indicates that she had any interest in CASANOVA boxing gloves before she signed the license agreement.

[38] 34 TTABVUE 6.

*York* case also involved two plaintiffs: an owner of the pleaded registrations, and a licensee who was unable to prove its own priority through use. The Board sustained the opposition based solely on the claim of the opposer who owned the pleaded registrations. *Chem. New York*, 1 USPQ2d at 1142 and 1144; *see also Gen. Mills, Inc. v. Fage Dairy Processing Indus. SA*, 100 USPQ2d 1584, 1594 n.12 (TTAB 2011) ("Where there are multiple plaintiffs, each plaintiff must prove its standing and, in the case of likelihood of confusion and dilution claims, prior use."), *judgment set aside on other grounds*, 110 USPQ2d 1679 (TTAB 2014) (non-precedential). Whether a licensee can assert priority based on use by the licensor of the licensed mark, as Moreno asserts, is an issue of first impression for the Board.

It is well-settled that use of a mark by a licensee inures to the benefit of the trademark owner. *See Gen. Motors Corp. v. Aristide & Co.*, 87 USPQ2d 1179, 1184 (TTAB 2008) ("A trademark owner can rely on the use of a licensee for its priority."); *Quality Candy Shoppes/Buddy Squirrel of Wisconsin, Inc. v. Grande Foods*, 90 USPQ2d 1389, 1392 (TTAB 2007) ("A basic principle underpinning trademark law in the United States is use of a mark in commerce; and years of precedent make it very clear that proper use of a mark by a trademark owner's licensee or related company constitutes 'use' of that mark attributable to the trademark owner."); *Chem. New York*, 1 USPQ2d at 1143 n.10 ("Except as otherwise indicated, 'opposer', when used hereafter in the singular, refers to Chemical New York, which, of course, is entitled to rely not only upon its registrations but also upon the use made by Chemical Bank, the licensee and wholly owned subsidiary or Chemical New York."); *see also* Section

5 of the Trademark Act, 15 U.S.C. § 1055 ("Where a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and shall not affect the validity of such mark or of its registration."). This is so because use of a mark by a related company inures to the benefit of the party who controls the nature and quality of the goods or services offered for sale in connection with the mark. *See Visa, U.S.A., Inc. v. Birmingham Trust Nat'l Bank*, 696 F.2d 1371, 216 USPQ 649, 653 n.4 (Fed. Cir. 1982); *McCormick & Co. v. Summers*, 354 F.2d 668, 148 USPQ 272, 274 (CCPA 1966); *Smith Int'l Inc. v. Olin Corp.*, 209 USPQ 1033, 1044 (TTAB 1981) (use of a mark by related companies inures to the benefit of the company exercising control over the quality of goods and services sold under the mark); *see also William & Scott Co. v. Earl's Rests. Ltd.*, 30 USPQ2d 1870, 1873 (TTAB 1994) (an assignee who is substituted for an assignor as plaintiff may rely on the assignor's use of the assigned mark "if such use inures to [the assignee's] benefit pursuant to Section 5 of the Trademark Act of 1946. For example, if [the assignor] is a licensee of [the assignee], whether by written agreement or by de facto arrangement, or if [the assignor's] use of the registered RHINO CHASERS mark is otherwise controlled by [the assignee], [the assignor's] use of the mark will inure to [the assignee's] benefit."). Moreno has provided no authority for the converse principle, i.e., that use of a mark by the controlling trademark owner inures to the benefit of the licensee, and we are aware of none.

Allowing a licensee to claim priority for itself in an *inter partes* proceeding based on the licensor's use of the mark (whether through the license or otherwise), could result in a licensee being able to claim *de facto* ownership of the licensed mark. The license agreement, relied upon by Moreno and reproduced above, states that it gives Moreno "no ownership rights in the Intellectual Property [i.e., the marks] other than the license granted hereby." Due to this express disavowal of any transfer to Moreno of ownership rights in CASANOVA, we cannot view the license as tantamount to an assignment of the mark, which might have allowed Moreno to assert whatever priority rights Deportes Casanova may have in the United States in the mark CASANOVA.[39] *Cf. William & Scott*, 30 USPQ2d at 1873 (discussing how use of an assigned mark by the assignor may inure to the benefit of the assignee, including "[f]or example, if [the assignor] is a licensee of [the assignee]"). We find that Moreno, a mere licensee, cannot rely on her licensor's use to prove priority.

VI.    Conclusion

Moreno does not argue in her brief that she has priority based on her own use of the mark CASANOVA for boxing gloves and, as a mere licensee, she cannot assert the purported priority rights of her licensor, non-party Deportes Casanova, in that mark for those goods. Accordingly, even though the pleaded and involved marks are likely to cause confusion, and Moreno has standing because she is the exclusive

---

[39] Because trademark rights and ownership are based on use in the United States, a licensing provision that includes the clause "appoint [licensee] as our representative for protecting our intellectual property in the United States" may only be interpreted to extend to the licensee's use of the licensor's intellectual property, and not to the licensor's current, prior, or future use.

licensee of Deportes Casanova, Moreno has not established priority, and therefore

cannot prevail in her Section 2(d) claim.[40]

**Decision**: The oppositions are dismissed and the petition to cancel is denied.

---

[40] In view of our disposition of these proceedings, we need not and do not decide Pro Boxing's affirmative defense of abandonment.