**INCOME TAX SERVICE COM-
PANY, Appellant,**

v.

**E. Bruce FOUNTAIN, dba Income Tax
Services Company, Appellee.**

**Patent Appeal No. 8863.**

United States Court of Customs
and Patent Appeals.

April 5, 1973.

Ronald A. Jacks, Washington, D. C., attorney of record, for appellant.

Harris Zimmerman, Oakland, Cal., attorney of record, for appellee.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

RICH, Judge.

This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board, abstracted at 166 USPQ 285 (1970), granting appellee's petition to cancel appellant's registration No. 848,369, issued April 30, 1968, for the service of preparing income tax statements. Appellant's registered mark consists of "ITS" on a green oval background and claims a date of first use of December 1, 1965.

The petition to cancel under 15 U.S.C. § 1064, filed Dec. 16, 1968, was predicated upon the damage to appellee as prior user of the mark "ITS" and a design for income tax accounting services. We affirm.

*Facts*

Appellee, E. Bruce Fountain, has himself been in the business of preparing income tax returns in California and Oregon under the name of Income Tax Services Company since January 1, 1964, when he acquired the business from one Ziegelhofer. Ziegelhofer acquired the business from MacNeil in 1950. MacNeil had a registration of a dissimilar mark containing the "ITS" logo, No. 534,122, issued November 28, 1950, which was allegedly conveyed to Zigelhofer with the business, although no reference was made to the mark in the bill of sale, nor any assignment recorded under the provisions of 15 U.S.C. § 1060. In 1956, MacNeil's registration was cancelled for failure to file an affidavit of continuing use under 15 U.S.C. § 1058.

Appellant, Income Tax Service Company, a Michigan corporation, in the business of preparing income tax returns throughout several states, obtained the registration of the trademark "ITS" which is the subject of this appeal, claiming first use of the mark Dec. 1, 1965. Appellant's witness, Rizik, who signed the application for registration as president of appellant, testified that he had been using the mark for "at least another five or seven, ten years before that" date of claimed first use, but no evidence was proffered to establish such earlier use.

*The Board's Decision*

The board granted the petition to cancel appellant's registration, noting that

The testimony for the petitioner is clear, documented and convincing of the fact that, through a predecessor-intitle, petitioner has used the "ITS" logo since as early as 1950. On the other hand, respondent's testimony is vague and lacking in conviction and on the basis thereof, respondent is entitled, at best, to a date of December 1, 1965, as the earliest use of its mark.

The board then answered appellant's contention that appellee "has been derelict because he failed to file a notice of opposition after *publication*" of appellant's mark, waiting instead until seven and one half months after the registration issued, noting that giving effect to any such waiver would be inconsistent with the specific statutory provision that a petition to cancel may be filed within five years from the date of registration of the mark. (15 U.S.C. § 1064). In answer to appellant's assertion that it was "now the owner of a registered mark in which it has made a substantial investment" and it would be unjust to cancel the registration, the board expressed the opinion that any such investment was made after appellant had notice of appellee's assertion of prior rights in the mark and was thus made at its peril.

### Appellant's Arguments Here

Appellant's arguments before this court are more equitable than legal. (See 15 U.S.C. § 1069). No challenge is made to the facts found by the board, such as appellant's right to rely, at best, upon the date of first use alleged in his application, or the legal conclusion that there is a likelihood of confusion when the marks are applied to income tax services. Appellant tells us in its brief that the "ultimate issue" is whether appellee's petition for cancellation "is barred by the equitable defenses of estoppel or abandonment."

Abandonment came about, appellant asserts, because, among other things, appellee Fountain acquired from his predecessor, Zigelhofer, only the common law right in the mark because no assignment of MacNeil's original registration was ever recorded and the registration was later cancelled for failure to file an affidavit of continuing use, thus at least implying appellee's intent to abandon the mark. Estoppel, appellant claims, bars appellee's petition to cancel because, coupled with the alleged abandonment stemming from the above facts, appellee or his predecessor failed to protect the common law right they acquired, neither applying for a new registration nor taking other affirmative action within a reasonable time, whereas, appellant took "every measure required of a reasonable man, including a diligent search for similar marks and ultimate registration" and "expended substantial sums to expand the business throughout the country." Appellant complains that business dealings between the parties, shown by Rizik's testimony, were such that appellee first "deluded appellant into thinking that he was interested in becoming a franchisee" of appellant, "then offered to sell its mark and business name" to appellant, and only instituted the cancellation action "after appellant refused to 'bargain' by paying tribute in this manner * * *."

### OPINION

We must disagree with appellant's arguments insofar as they ask us to apply the equitable factors of abandonment and estoppel. Apart therefrom, there is an unchallenged legal basis for the board's decision. It is unchallenged that appellant is entitled at best to a date of December 1, 1965, as the earliest date of use of the mark "ITS" and also unchallenged is the board's finding that since 1964 Fountain "actively engaged in the business of tax consultant services under the 'ITS' logo * * *." This prior *use* of the mark "ITS" is sufficient basis for the granting of the petition to cancel, such use being almost two years prior to the earliest use of the mark proved by appellant.

As to the equitable considerations, we do not find appellant's argument based upon abandonment to be appropriate since all of the facts which allegedly resulted in appellee's having abandoned the mark took place *prior* to the earliest date of use relied upon by appellant and there is no question that appellee was continuously using the mark from a time at least two years before the filing of the petition to cancel.

Appellant's estoppel argument is based in part upon the conduct of appellee's predecessor in title with respect

to the prior mark and in part on the allegedly unfair business treatment it received from appellee who dickered with appellant in September, 1968, without telling appellee about his right to seek cancellation of appellant's trademark, coupled with appellant's alleged reliance thereon, to its detriment, in having "expended substantial sums to expand the business throughout the country." With respect to the latter, the board pointed out that insofar as the record shows, any investment which appellant may have made was *after* it had notice of appellee's assertion of prior rights in its mark. Appellant has pointed to no testimony or evidence in the record which would controvert this finding by the board and we have been unable to find any. Accordingly, the appellant has not proved any reliance which would support the application of the principles of estoppel. See Ralston Purina Co. v. Midwest Cordage Co., Inc., 373 F.2d 1015, 54 CCPA 1213 (1967). The judgment of the Trademark Trial and Appeal Board is affirmed.

Affirmed.